# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| JASON PATRICK PERSHALL, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| vs. | ) | Case No. CIV-09-67-D |
| DAVID C. MILLER, | ) |  |
| Respondent. | ) |  |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in Case No. CF-2004-856, District Court of Payne County. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 14], and the state court transcripts. Petitioner has neither filed a reply nor sought an extension of time in which to do so. The case is at issue. For the reasons set forth below, it is recommended that the petition be denied.

## BACKGROUND AND PROCEDURAL HISTORY

The issues raised in this petition for habeas relief relate to a traffic stop that ultimately produced evidence used against Petitioner at trial. On December 5, 2004, patrol officer Robert Miller of the Yale, Oklahoma Police Department stopped a blue 1990 Pontiac sedan for a defective tag light. Tr. Vol. I, pp. 25-26. Four persons occupied the vehicle: Tammy Miller, driver; Brandi Glasby, front-seat passenger; Tim Frye, driver's side backseat passenger; and Petitioner, who sat on the passenger side of the back seat. *Id.* at 28-29.

Officer Miller advised the driver that her tag light was defective, and then asked for and received identification from the passengers. *Id.* at 29. Officer Miller then called in warrant checks on all occupants of the vehicle and discovered no outstanding warrants. *Id.* at 30-31. At some point during the stop, Officer Miller spoke with Ms. Miller, the driver, outside of the vehicle and near the rear, where he advised her to have the tag light cleaned so that it could properly illuminate the tag. *Id.* at 29, 32. He then handed the passengers' identification cards back to Ms. Miller and informed her that she was free to go. *Id.* at 32. However, before Ms. Miller reentered the vehicle, Officer Miller called her back to the rear of the vehicle and asked her if it contained any illegal guns or drugs. *Id.* at 33. She responded in the negative, and Officer Miller then asked if he could search the vehicle. *Id.* Ms. Miller consented to the search. *Id.*

Officer Miller removed Mr. Frye and Petitioner from the backseat one by one, patted them down for weapons, and then began searching the vehicle. *Id.* at 34. In the area around the passenger side of the backseat, Officer Miller discovered a backpack with the name "Jason Pershall" written twice across it. *Id.* at 35-36. Officer Miller asked Petitioner whether the backpack was his, and Petitioner confirmed ownership. *Id.* at 36. Officer Miller then asked Petitioner whether he could look inside the bag, and Petitioner consented. *Id.* at 36-37. Officer Miller found two mason jars inside the backpack, one containing liquid and sediment, and the other containing a coffee filter and a white-powder residue. *Id.* at 37-39, 87. On the belief that the jars contained illegal substances, Officer Miller handcuffed Petitioner and placed him under arrest. *Id.* at 38-39, 68. Chemical analysis later revealed

2

that both jars contained methamphetamine. *Id.* at 75-77.

On January 18, 2006, Petitioner was convicted after a jury trial in the District Court of Payne County of trafficking in illegal drugs and possession of a controlled dangerous substance without a tax stamp. Case No. CF-2004-856, Payne County District Court. *See* Response, Ex. 3, p. 1 (Summary Opinion of Oklahoma Court of Criminal Appeals entered April 24, 2008, in *Pershall v. State*, Case No. F-2007-127). The jury set punishment for the trafficking conviction at ten years imprisonment plus a $30,000 fine, and set punishment for the possession conviction at five years imprisonment. *Id.* The district court sentenced petitioner in accordance with the jury's verdict, imposing consecutive prison terms of ten and five years but suspending the $30,000 fine. *Id.*

Petitioner did not timely appeal his convictions to the Oklahoma Court of Criminal Appeals (OCCA), but sought and obtained a recommendation from the Payne County District Court that Petitioner be granted an out of time appeal. Response, p. 2. The OCCA granted Petitioner an out of time appeal, *id.*, and Petitioner appealed, raising three propositions of error. Response, Ex. 3, pp. 1-2. First, Petitioner claimed that the officer who arrested him was acting beyond the scope of his jurisdiction. *Id.*, p. 1. Second, Petitioner claimed that the arresting officer discovered methamphetamine only after illegally detaining him in violation of the Fourth and Fifth Amendments. *Id.* Third, Petitioner claimed that he received ineffective assistance of counsel at trial because his attorney failed to raise the jurisdictional argument described in petitioner's first proposition of error, and because his attorney failed to raise a timely objection to the admission of evidence obtained after the

3

allegedly illegal seizure described in Petitioner's second proposition of error. *Id.*, p. 2. The OCCA affirmed Petitioner's convictions on April 24, 2008, holding that "there is no evidence that the vehicle [in which petitioner was a passenger] was stopped outside the jurisdiction of the police officer," that "after the stop concluded, a new, consensual, and lawful encounter occurred between the officer and the car occupants, which yielded the admissible evidence used to convict Mr. Pershall[,]" and that "trial counsel was not ineffective for failing to raise unmeritorious claims." *Id.*, pp. 2-3.

Petitioner has filed for habeas corpus relief under 28 U.S.C. § 2254 in this Court, claiming entitlement to relief on essentially the same three grounds he raised as propositions of error in the appeal of his state court conviction. Petition, pp. 6-9. Respondent has filed a response arguing that Petitioner's grounds for relief are without merit and urging this Court to deny the petition. Response, p. 18.

## **STANDARD FOR HABEAS RELIEF**

When a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are

4

materially indistinguishable from a decision of the Supreme Court and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413; *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003). It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. *Williams*, 529 U.S. at 410-11; *Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004).

The OCCA disposed of the claims raised by Petitioner on direct appeal by a summary opinion in which the reasoning was only briefly stated. Nevertheless, this Court owes deference to the state court's result. *Aycox v. Little*, 196 F.3d 1174, 1177 (10th Cir. 1999). *See Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (holding that state court's failure to discuss or even to be aware of federal precedent does not in itself render the decision contrary to federal law); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (applying the § 2254(d) deferential standard "notwithstanding the [OCCA's] failure to cite or discuss federal case law") (citing *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)). Further, the state court's factual findings are presumed correct and the burden is on Petitioner to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. Ground One - Police Acted Outside Jurisdiction

In Ground One, Petitioner contends that Officer Miller, in effecting the traffic stop that led to the discovery of methamphetamine in Petitioner's backpack, acted "outside the boundaries of [his] jurisdiction and authority." Petition, p. 6. Although Officer Miller "observed the violation" within Yale's city boundaries, according to Petitioner, the stop itself occurred outside of those boundaries, and Officer Miller therefore lacked jurisdiction. *Id.*

In considering this argument, the OCCA found "no evidence that the vehicle was stopped outside of the jurisdiction of the police officer." Response, Ex. 3, p. 2. In the OCCA's view, "trial court evidence reflect[ed] that the traffic stop occurred within appropriate boundaries and the city police officer was authorized to stop and detain the car for a traffic violation." *Id.*, n.1. The OCCA even permitted Petitioner to supplement the trial record with a city ordinance that, according to Petitioner, demonstrated that Officer Miller was beyond the Yale city limits when he stopped the vehicle. *Id.*; *see also* Response, Ex. 1, p. 16 (providing Petitioner's argument regarding the city ordinance). Nevertheless, the OCCA concluded that this additional evidence "fail[ed] to counter the trial testimony regarding city limits," and consequently affirmed the trial court's determination that Officer Miller was within his jurisdiction. Response, Ex. 3, p. 2 n.1.

Petitioner now asserts the same argument in his petition for habeas relief. However, Petitioner's assertion that the officer was out of his authorized jurisdiction, even if relevant for purposes of state law, does not, without more, raise a claim that his federal constitutional

6

rights were violated. *See Virginia v. Moore*, 553 U.S. 164, 176-78 (2008) (holding that a search of a person, conducted incident to an arrest that was beyond the arresting officers' authority under state law, nonetheless should be evaluated by Fourth Amendment standards for warrantless searches); *United States v. Gonzales*, 535 F.3d 1174, 1181-83 & n.2 (10th Cir. 2008) (holding that an extra-jurisdictional traffic stop based on an observed traffic violation does not constitute Fourth Amendment violation, despite the fact that the stop violated state law); *United States v. Sawyer*, 441 F.3d 890, 895 (10th Cir. 2006) (stating that officer's authority under state law is irrelevant for purposes of analyzing validity of consent to search).

The Supreme Court has unambiguously declared that "it is not the province of a federal habeas court to re-examine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, the Tenth Circuit has specifically recognized that "police department jurisdiction" is a matter of state law "decided by the . . . Oklahoma state court," and, "consequently, . . . not reviewable by a federal habeas court." *Griggs v. Ray*, 118 Fed. Appx 381, 383 (10th Cir. Dec. 2, 2004). Because this claim raises only a question of state law which is not cognizable in a federal habeas petition, Petitioner is not entitled to habeas relief on Ground One.

## II. Ground Two - Fourth Amendment Claim

In Ground Two, Petitioner asserts that he was "[i]llegally [d]etained in violation of [his] rights under the U.S. Constitution and therefore the evidence seized was inadmissible."

Petition, p. 7. Petitioner contends therefore that the evidence introduced against him at trial "should have been suppressed as fruits of the poisonous tree." *Id.*[1]

Citing *Stone v. Powell*, 428 U.S. 465, 494 (1976), Respondent argues that the claim Petitioner raises in Ground Two is not reviewable in a § 2254 action because the claim was fully and fairly litigated in state court. Response, pp. 6-8. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. Such opportunity may be provided by the State either at trial or on direct review. *Id.*, at 494-95 n. 37 ("[W]e hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review.").

---

[1] In the petition, Petitioner summarizes the second ground as illegal detention "in violation of the Fourth and Fifth Amendments." Petition, p. 3. As supporting facts for this ground, Petitioner states more generally that he was illegally detained "in violation of [his] rights under the U.S. Constitution." *Id.* It appears that in asserting this second ground for relief, Petitioner is essentially repeating the second proposition of error he alleged on direct appeal before the OCCA. *See* Response, Ex. 1, p. 2. While the title of that proposition did mention both Fourth and Fifth Amendment violations, Petitioner's actual arguments before the OCCA raised only Fourth Amendment claims. *See id.*, pp. 17-27. Consequently, the OCCA's Summary Opinion only addressed those arguments. *See* Response, Ex. 3, p. 2. Therefore, to the extent Petitioner's habeas petition appears to assert a Fifth Amendment violation, it raises a claim that Petitioner has not exhausted before the Oklahoma state courts. It is presumed that Petitioner does not desire to proceed here with an unexhausted claim, especially since the petition itself indicates that Petitioner exhausted his state remedies on Ground Two. Petition, p. 8. Thus, the Court will not address an unexhausted Fifth Amendment claim.

As Respondent contends, the Fourth Amendment violations Petitioner alleges in Ground Two do not warrant habeas relief because Petitioner had a full and fair opportunity to litigate these claims in state court. Although defense counsel did not file a pretrial motion to suppress, at the preliminary hearing counsel "reserve[d] any objections as to the validity of the search." Response, Ex. 1, p. 19. The court overruled those objections. *Id.* On the first day of trial, defense counsel alleged that Officer Miller's detention of Petitioner violated the Fourth Amendment "and that the evidence in this case should therefore be seized." Tr. Vol. I, p. 4. Noting that the issue of detention in violation of the Fourth Amendment had not been raised until less than three minutes before the beginning of Petitioner's jury trial, the court overruled defense counsel. *Id.*

Even if the failure of Petitioner's defense counsel to raise a timely Fourth Amendment violation hindered Petitioner's ability to litigate that issue at trial, that failure has no bearing on whether "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone*, 428 U.S. at 494. *See Bivens v. Hargett*, No. 97-6333, 1999 WL 7729, at *3 (10th Cir. Jan. 11, 1999) (unpublished op.) (reviewing a district court's denial of habeas relief grounded on an alleged Fourth Amendment violation, and finding, as had the district court, that "Oklahoma [had given] petitioner the 'opportunity' to test his Fourth Amendment claims, but such available procedures were forfeited by his attorney's failure to appear at the hearing."). Moreover, Petitioner raised his Fourth Amendment claims before the OCCA on direct appeal. *See* Response, Ex. 1, pp. 17-27. In *Bivens*, the Tenth Circuit observed that, despite the failure of the petitioner's trial counsel to even appear at a hearing

9

and argue Fourth Amendment claims, those claims "were fully briefed on appeal, and the Oklahoma Court of Criminal Appeals appears to have considered the issues on their merits." *Bivens*, 1999 WL 7729, at *3. Likewise, in this case, the OCCA, "after thoroughly considering the entire record," addressed Petitioner's Fourth Amendment claims on the merits and found that "after the traffic stop concluded, a new, consensual, and lawful encounter occurred between the officer and the car occupants, which yielded the admissible evidence used to convict Mr. Pershall." Response, Ex. 3, p. 2. The OCCA also emphasized that Petitioner himself consented to a search of a backpack he admitted was his, without any evidence "that he was compelled to consent." *Id.* at n. 2 (citing *State v. Goins*, 84 P.3d 767, 770 (Okla. Crim. App. 2004)).[2] Based on those facts, the OCCA concluded that no illegal detention occurred, and that the evidence obtained as a result of Officer Miller's consensual search was properly admitted at trial. *See id.*

Thus, it is apparent that the OCCA considered and rejected Petitioner's Fourth Amendment claim on the merits, and that such decision was premised on Fourth Amendment precedent concerning consensual search. Based on this record, the undersigned finds that Petitioner has had a full and fair opportunity to litigate Petitioner's Fourth Amendment claim. As a result, Petitioner's claim in Ground Two is barred from consideration in this § 2254 proceeding. *See Stone*, 428 U.S. at 494-95. *See also Brown v. Sirmons*, 515 F.3d 1072, 1082-83 (10th Cir. 2008) ("Because the OCCA 'thoughtfully considered the facts underlying

---

[2]In *Goins*, the OCCA held that for purposes of Fourth Amendment analysis, further questioning unrelated to an initially valid traffic stop is permissible if the initial detention has become a consensual encounter. *Goins*, 84 P.3d at 771.

[Mr. Brown's] Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent,' we agree with the district court that *Stone* bars us from considering this claim."); *Webster v. Attorney General*, 213 Fed. Appx. 664, 667 (10th Cir. Jan.12, 2007) (unpublished op.) (although the petitioner had not requested suppression of evidence in the trial court, he had a full and fair opportunity to litigate a Fourth Amendment claim because "the OCCA had thoroughly considered the entire record and had cited the applicable case law"); *Molloy v. Scott*, 60 Fed. Appx. 183, 185 (10th Cir. Dec.12, 2002) (stating that the claimant had a full and fair opportunity to litigate his Fourth Amendment claim because "the OCCA [had given] 'thorough consideration' to [the claimant's] arguments and to 'the entire record . . . on appeal, including the original record, transcripts, and briefs"). Accordingly, the undersigned finds that Petitioner's claim in Ground Two does not merit habeas relief.

### III. Ground Three – Ineffective Assistance of Trial Counsel

In Ground Three, Petitioner alleges that he was denied effective assistance of counsel at trial. Petition, p. 9. Petitioner contends that his trial counsel was ineffective for two reasons: (1) failure "to raise the claim of invalid jurisdiction for the crimes in which I was charged," or, stated alternatively, failure "to present to the court facts that [the] police officer was acting outside his jurisdiction and authority"; and (2) failure "to move to suppress statements made by defendant in a timely manner." Petition, p. 8. These asserted grounds of ineffectiveness essentially mirror Petitioner's first two grounds for habeas relief. *See* Petition, pp. 6-7. Respondent contends that under 28 U.S.C. § 2254(d), Petitioner is not

11

entitled to habeas relief on the ineffective assistance of counsel claims he raised on direct appeal. Response, pp. 8-18. The undersigned agrees.

On direct appeal, Petitioner raised essentially the same claims of ineffective assistance of counsel that Petitioner presents as grounds for habeas relief. *See* Response, Ex. 1, p. 28. The OCCA rejected these claims. *See* Response, Ex. 3, p. 2. Because it had already determined that Petitioner's arguments regarding police jurisdiction and illegal detention were without merit, the OCCA concluded "that trial counsel was not ineffective for failing to raise unmeritorious issues." *Id.*

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." *Id.* at 688. Errors are prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. *Id.* at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* In reaching its decision regarding Petitioner's ineffective assistance claims, the OCCA identified the correct legal principle from the Supreme Court's

decisions,[3] and therefore, the state court's decision is reviewed to determine whether the rejection of Petitioner's ineffective assistance of counsel claim involved an "unreasonable application" of federal law. *See Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003).

### A. Police Jurisdiction

Petitioner first claims that his trial counsel was ineffective for failure to claim that the traffic stop that ultimately led to his arrest occurred outside the Yale city limits. In light of the discussion in connection with Ground One, the undersigned finds that Petitioner has not shown that trial counsel's failure to argue that Officer Miller was beyond his jurisdiction at the time of the traffic stop fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Respondent notes that, just prior to trial, at a conference in the judge's chambers, Petitioner's counsel specifically addressed the question of police jurisdiction. Response, p. 12. Petitioner's counsel informed the judge that Petitioner had asked her to subpoena two witnesses, both of whom worked at the jail where Petitioner was being held, who had apparently told Petitioner that Officer Miller was outside his jurisdiction at the time of the stop. *See* Tr. Vol. I, p. 4. Petitioner's counsel then informed the judge that this was "not true" and that she had "looked at the map" and determined for herself that "the jurisdiction of the Yale Police Officers was sufficient." *Id.* Therefore, Petitioner's counsel did not subpoena the witnesses. *Id.* As Respondent notes, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually

---

[3]The OCCA cited *Strickland* as the basis for its conclusion that trial counsel was not ineffective, noting that "[t]rial counsel's performance was neither deficient nor prejudicial for failing to raise the issues in Propositions I and II." Response, Ex. 3, p. 3.

unchallengeable . . .[.]" *Strickland*, 466 U.S. at 690. The undersigned finds, based on this record, that Petitioner has failed to demonstrate that counsel rendered constitutionally deficient assistance.

Moreover, Petitioner has failed to establish that there is a reasonable probability that the outcome of the trial would have been different had counsel objected to the validity of the arresting officer's jurisdiction. *Strickland*, 466 U.S. at 694. As previously noted, the OCCA permitted Petitioner to supplement the trial record with a Yale city ordinance that Petitioner claimed would resolve the jurisdiction question in his favor. *See* Response, Ex. 3, p. 2. The OCCA reviewed that evidence and concluded that it failed "to counter the trial testimony regarding city limits" or to show "that the stop was outside the Yale city limits." *Id.* at n.1. The OCCA's finding that the supplemental evidence was insufficient to overcome evidence presented at trial mitigates against any conclusion that the outcome would have been different had Petitioner's counsel argued the point. Consequently, Petitioner has also failed to satisfy the prejudice prong of the *Strickland* standard.

Because Petitioner has shown neither deficient performance nor prejudice, the OCCA's rejection of Petitioner's ineffective assistance claim on the issue of police jurisdiction was neither contrary to nor an unreasonable application of *Strickland v. Washington, supra*. Consequently, Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of counsel.

## B. Fourth Amendment

Petitioner also contends that his trial counsel was ineffective for failing to move to suppress evidence obtained as a result of an alleged Fourth Amendment violation. The merits of this Fourth Amendment claim must be analyzed to determine whether Petitioner was prejudiced by counsel's allegedly deficient performance and whether the OCCA's determination was objectively reasonable. *See, e.g., Hooper v. Mullin*, 314 F.3d 1162, 1175-1176 (10th Cir. 2002). Given Petitioner's pro se status, the undersigned generously construes the petition to assert the same Fourth Amendment claim as asserted on direct appeal in state court – that Petitioner was illegally detained after the traffic stop ended, and therefore his statements admitting ownership of the backpack in which the methamphetamine was found, and the methamphetamine itself, "were the fruit of an unlawful detention." Response, Ex. 1, p. 17.

As previously discussed, the two-part test established by the Supreme Court in *Strickland*, requires Petitioner to prove that "counsel's representation fell below an objective standard of reasonableness" and that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Id.* at 688, 692. To establish such prejudice, Petitioner must show both that his challenge to his detention after the conclusion of the traffic stop is meritorious and that a reasonable probability exists that the outcome of the proceeding would have been different had the claim been raised. *See Kimmelman*, 477 U.S. at 375. Because the OCCA addressed Petitioner's ineffective assistance of trial counsel claim on the merits, Petitioner is entitled to habeas relief on his ineffective assistance of trial counsel claim only

15

if the OCCA unreasonably applied the *Strickland* standard. *See* 28 U.S.C. § 2254(d)(1). As discussed below, the undersigned finds that there is no reasonable probability that timely assertion of the Fourth Amendment claim would have changed the result at trial, and thus the OCCA's application of *Strickland* was reasonable.

Petitioner contends that the traffic stop ceased after Officer Miller returned the passengers' identification cards to the driver and indicated that she was free to go. Response, Ex. 1, p. 21. In Petitioner's view, "any legitimate basis or reason for the stopping of the vehicle had ceased and was concluded." *Id.* Therefore, according to Petitioner, Officer Miller's subsequent questions, which led to a consensual search of the vehicle, and finally to a consensual search of Petitioner's backpack, amounted to a "further investigative detention" unsupported by any "reasonable [or] articulable suspicion." Response, Ex. 1, p. 23.

While it is true that an individual "may not be detained even momentarily without reasonable, objective grounds for doing so," *Florida v. Royer*, 460 U.S. 491, 498 (1983), a police officer does not run afoul of the Fourth Amendment simply by asking questions, even without reasonable suspicion, "if [an] initial detention has become a consensual encounter," *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994). A lawful detention executed in the form of "a routine traffic stop becomes a consensual encounter once the trooper has returned the driver's documentation so long as a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." *United States v. Bradford*, 423 F.3d 1149, 1158 (10th Cir. 2005). An

encounter "loses its consensual nature," and therefore "trigger[s] Fourth Amendment scrutiny . . . . '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Once a lawful detention has ended, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434.

Here, Officer Miller terminated the initial traffic stop after he returned the passengers' identification documents and told the driver she was free to go. Then, without any mention in the record of a show of authority or physical force, Officer Miller asked the driver if the vehicle contained illegal guns or drugs. Tr. Vol. I, p. 33. The driver told Officer Miller that it did not and then consented when Officer Miller asked if he could search the vehicle. *Id.* Petitioner argued on direct appeal that this exchange and the subsequent search amounted to "a new and further investigative detention" that was unlawful for lack of "reasonable and articulable suspicion." Response, Ex.1, p. 26. However, as the above-cited authorities make clear, Officer Miller needed no reasonable suspicion to ask questions of the driver. *See Gonzalez-Lerma*, 14 F.3d at 1483. Moreover, because the search appears to have been conducted pursuant to the driver's consent, that investigation falls squarely within "one of the specifically established exceptions" to the Fourth Amendment requirements for a valid search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

As the State noted on direct appeal, Petitioner "does not appear to challenge the voluntariness of [the driver's] consent." Response, Ex. 2, p. 9. Rather, he takes issue with

17

Officer Miller's subsequent interaction with him personally. During the course of his search, Officer Miller removed both backseat passengers from the vehicle and patted them down for weapons. Tr. Vol. I, p. 34. After resuming his search, Officer Miller discovered Petitioner's backpack in the backseat, obtained consent to search the backpack from Petitioner, and discovered methamphetamine. *Id.* at 36-37. Petitioner contends that, by "getting [him] out of the vehicle and patting . . . him and his garments down for weapons," Officer Miller exercised an "overbearing show of authority" that "exceeded the limits of consent" and rendered Petitioner's subsequent consent to search the bag involuntary. Response, Ex. 1, pp. 26-27.

An officer is justified in performing a pat-down if the available facts would "warrant a man of reasonable caution to believe that a frisk would be necessary to protect himself." *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996). Here, Officer Miller was the only officer at the scene, searching a vehicle occupied by four persons. In *United States v. Manjarrez*, 348 F.3d 881, 887 (10th Cir. 2003), the Tenth Circuit determined that an unassisted trooper was fully justified in performing a pat-down during the consensual search of a vehicle with only one occupant. Under those circumstances, the *Manjarrez* court concluded that the trooper "could not be reasonably expected to . . . turn his back on Defendant, insert his head into Defendant's car, and search the car without first checking Defendant for weapons." *Id.* That reasoning is equally applicable in this case.

Furthermore, to the extent Petitioner asserts that his subjugation to a pat-down rendered his later consent to search the backpack involuntary, the undersigned finds that

18

argument unpersuasive. In *Manjarrez*, the Tenth Circuit cited with approval the Eighth Circuit's assessment of similar facts in *United States v. Davis*, 202 F.3d 1060 (8th Cir. 2000). *See Manjarrez*, 348 F.3d at 887. In *Davis*, a suspect claimed that the consensual nature of a police encounter changed once the police subjected him to a pat-down. *See Davis*, 202 F.3d at 1062. Rejecting this argument, the Eighth Circuit held that the officer "did nothing to change the consensual nature of the encounter except frisk [the suspect] for weapons. When that momentary seizure ended, [the suspect] remained free to answer [the officer's] questions or to leave." *Id.* The record supports a similar conclusion in this case. In the OCCA's review of Petitioner's Fourth Amendment claims, which were fully briefed for its evaluation, it concluded that "Pershall could have refused" Officer Miller's request to search his backpack even after the officer conducted a pat-down. Response, Ex. 3, p. 2 n.2. The OCCA further noted a complete absence of any "evidence that [Petitioner] was compelled to consent." In the OCCA's view, "[b]oth that consent and Pershall's statements that the backpack was his . . . were freely and voluntarily given." *Id.*

Because Officer Miller's post-stop encounter with the Petitioner's was lawful and the consensual search of his backpack did not violate his Fourth Amendment rights, the undersigned finds that Petitioner has failed to show a reasonable probability that the outcome would have been different had trial counsel timely raised the Fourth Amendment through a motion to suppress at trial. It follows that Petitioner's trial counsel was not ineffective in failing to raise a Fourth Amendment argument any sooner than a few minutes prior to trial. *See Strickland*, 466 U.S. at 692 ("any deficiencies in counsel's performance must be

19

prejudicial to the defense in order to constitute ineffective assistance under the Constitution"). Therefore, the OCCA's rejection of Petitioner's claim that trial counsel rendered ineffective assistance by failing to timely raise a Fourth Amendment claim is not contrary to or an unreasonable application of *Strickland.* Petitioner is not entitled to habeas relief on his claim of ineffective assistance of trial counsel.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 11th day of December, 2010. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 24th day of November, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE